IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRIS IANNOTTI, individually and for others similarly situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 20-cv-958-DWD ) |
| WOOD GROUP MUSTANG, | ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

**DUGAN, District Judge:**

Plaintiff Chris Iannotti, individually and on behalf of others similarly situated, brings this complaint against Defendant Wood Group Mustang, alleging violations of the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Illinois Wage Payment and Collection Act ("IWPCA"). Plaintiff seeks to bring the FLSA claim as a nationwide collective action under 29 U.S.C. § 216(b), and the Illinois-law claims as a class action under Fed. R. Civ. P. 23.

Now before the Court is Plaintiff's Motion for Conditional Certification (Doc. 50). Defendant timely opposed the Motion (Doc. 57), and the Court held a hearing on May 4, 2022. Having considered the briefing and arguments, and for the reasons set forth below, the Court will grant the Motion for Conditional Certification. However, the Court will provisionally limit notice to Illinois employees, while reserving ruling on the issue of personal jurisdiction for potential out-of-state opt-in plaintiffs.

1

**Background**

The FLSA prohibits employers from requiring an employee to work more than forty hours in a workweek unless the employee receives compensation of at least one-and-a-half times their regular rate. 29 U.S.C. § 207(a)(1). For violations of this provision, the FLSA authorizes collective actions by employees on behalf of themselves and other employees who are "similarly situated." 29 U.S.C. § 216(b).[1] Plaintiff Iannotti is a former employee of Defendant. Plaintiff alleges that he, and others similarly situated, worked as day rate employees of Defendant, and were paid a flat amount for each day worked regardless of the number of hours they worked (Doc. 1, ¶¶ 2, 31-38). Plaintiff alleges on his own behalf, and on behalf of the potential class, that Defendant willfully violated the FLSA by using this "day rate scheme" to pay its employees a day rate without overtime pay for the hours worked in excess of forty hours in a work week (*Id.*).

Plaintiff requests that this Court conditionally certify a collective action, defining the potential class as: **All employees Wood Group paid according to its day rate pay plan in the past three years** (Doc. 50). Defendant opposes certification, arguing that Plaintiff cannot prove potential members of the proposed class are "similarly situated" such that resolving the class claims will require highly individualized inquiries. Defendant further argues that if a conditional class is certified, that the class should be

---

[1] Although Plaintiff has raised claims under the FLSA and both the Illinois Minimum Wage Law and Illinois Wage Payment and Collection Act, his request for collective action is based on the FLSA. Collective actions under the FLSA differ from those under Fed. R. Civ. P. 23 in that the FLSA requires class members to "opt in," whereas Rule 23 putative class members must choose to "opt-out." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013). Because Plaintiff is seeking a collective action under the FLSA, rather than certification of a class under Rule 23, the Court limits its analysis to that claim for purposes of this Order.

2

limited to Defendant's employees who worked in Illinois.  Here, Defendant renews its jurisdiction argument, asserting that the Court would lack personal jurisdiction over Defendant as to any claims brought by employees who did not live or work in Illinois, i.e., the out-of-state opt-in plaintiffs.[2]

## Discussion

The Seventh Circuit has not identified a specific standard for certifying a collective action under the FLSA.  Instead, district courts have "wide discretion" in determining how these suits should proceed.  *Weil v. Metal Techs., Inc.*, 925 F.3d 352, 357 (7th Cir. 2019).  In exercising its discretion, the district courts must "respect judicial neutrality and avoid even the appearance of endorsing the action's merits."  *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1046 (7th Cir. 2020).  District courts in this Circuit generally apply an *ad hoc* two-step process in these cases.[3]  *See Owens v. GLH Cap. Enter., Inc.*, No. 3:16-CV-1109-NJR-SCW, 2017 WL 2985600, at *1 (S.D. Ill. July 13, 2017) (citing *Jirak v. Abbott Lab'ys, Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (collecting cases)); *Dennis v. Greatland Home Health*

---

[2] On July 6, 2021, this Court denied, without prejudice, Defendant's Motion to Dismiss on this issue of personal jurisdiction over potential non-Illinois opt-in plaintiffs (Doc. 47).  The issue of whether out-of-state opt-in plaintiffs in FLSA collective actions must establish personal jurisdiction over a non-resident defendant for each of their individual claims, opposed to just the named plaintiff establishing personal jurisdiction, is currently the subject of a nationwide split at both the district-court and appellate-court levels (*See* Doc. 47) (collecting cases).  Of the three appellate courts to decide this issue, both the Sixth and Eighth Circuits have concluded that district courts do not have personal jurisdiction over a non-resident defendant with respect to claims brought by out-of-state opt-in plaintiffs.  *See Canaday v. Anthem Companies, Inc.*, 9 F.4th 392 (6th Cir. 2021) (finding that the district court must have specific personal jurisdiction over claims brought by each of the individual opt-in plaintiffs.); *Vallone v. CJS Sols. Grp., LLC*, 9 F.4th 861 (8th Cir. 2021) (in the context of personal jurisdiction, the district court "properly excluded [FLSA] claims with no connection to [the forum state].").  Whereas, the First Circuit has held that district courts only need personal jurisdiction over the Defendant as to the named-plaintiff's claims, and not as to each individual opt-in plaintiff.  *See Waters v. Day & Zimmerman NPS, Inc.*, 23 F.4th 84 (1st Cir. 2022).  Petitions for writ of certiorari have been filed with the United States Supreme Court in both the *Canaday* and *Waters* cases.

[3] The parties agree that this two-step process for certification is appropriate in this case (Doc. 50, p. 3; Doc.57, p. 2).

*Servs., Inc.*, 438 F. Supp. 3d 898, 899 (N.D. Ill. 2020); *Woods v. Club Cabaret, Inc.*, 140 F. Supp. 3d 775, 780 (C.D. Ill. 2015).

In the first step, i.e. "conditional certification", a court must determine whether the plaintiff and members of the proposed class are similarly situated enough to allow notice to be sent to prospective plaintiffs. *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 779 (N.D. Ill. 2007). Conditional certification typically occurs where the parties have engaged in only minimal discovery. *See Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004). Therefore, at this early stage, courts apply a more lenient "minimal showing" or "modest factual showing" standard to determine whether the class is similarly situated. *Dennis*, 438 F. Supp. 3d at 899 (citing *Jirak*, 566 F. Supp. 2d at 847; *Mielke*, 313 F. Supp. 2d at 762); *see also Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003) (referring to this standard as a "modest factual showing"); *Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005).

The modest factual showing is a lenient burden of proof and is often based only upon the pleadings and any affidavits submitted by the parties." *Beeson v. C-Cat, Inc.*, No. 120CV00252JPHMPB, 2020 WL 7425339, at *2 (S.D. Ind. Dec. 18, 2020), at *2 (citation and internal quotation marks omitted); *see also Pieksma v. Bridgeview Bank Mortg. Co., LLC*, No. 15 C 7312, 2016 WL 7409909, at *1 (N.D. Ill. Dec. 22, 2016) (Plaintiff must provide "some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common [unlawful] policy" (internal citation omitted)). The Court does not, however, "make merits determinations, weigh evidence, determine credibility, or

4

specifically consider opposing evidence presented by a defendant." *Id.* (quoting *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15-CV-10447, 2016 WL 1043429, at \*2 (N.D. Ill. Mar. 16, 2016)). A factual nexus that binds potential members of a collective action together is sufficient to meet this burden. *Gambo,* 2005 WL 3542485, at \*4. If the employees are found to be similarly situated, class members are given notice of the suit and an opportunity to opt-in. *Flores,* 289 F. Supp. 2d at 1045.

The second step of certification occurs after substantial discovery is complete, at which time the party opposing collective action typically moves to decertify the class. *Mielke,* 313 F. Supp. 2d at 762. At this stage, the Court makes a more stringent, factual determination as to whether the members of the class are similarly situated. *Id.* (citing *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)).

Here, the parties disagree as to whether Plaintiff and the proposed class are similarly situated. Plaintiff argues that the proposed class is similarly situated because all members are non-exempt employees who were paid a flat daily rate without overtime and regularly worked in excess of 40 hours a week but were not compensated for those excess hours. Conversely, Defendant argues that the proposed class is not similarly situated because of the individual differences in the employees' alleged guaranteed pay rates and job duties. Specifically, Defendant contends that the varying differences between each employee's compensation and job duties will require the Court to conduct highly individualized inquiries in order to determine whether each employee qualified for an exemption set forth in the Act. Defendant specifically refers to the reasonable relationship test in 29 C.F.R. § 541.604(b), which exempts certain employees from

5

overtime pay if Defendant can show that each employee is guaranteed at least the minimum weekly amount required by the FLSA regulations and that a "reasonable relationship" exists between the guaranteed amount and the amount actually earned. Defendant also argues that the proposed class members have significantly varied job duties, ranging from right of way agents to safety inspectors. In short, Defendant argues that these differences will require individual assessments of each employee's salaries and job duties rendering representative discovery and evidence difficult.

Generally, the determination of whether Plaintiff and others similarly situated qualify as exempt employees under the FLSA is a merits determination that will be considered at the second phase of certification after the parties have conducted discovery, and not at this initial conditional inquiry. *See, e.g.*, *Slaughter v. Caidan Mgmt. Co., LLC*, 317 F. Supp. 3d 981 (N.D. Ill. 2018) ("the applicability of FLSA exemptions typically is not addressed during step one of the certification analysis") (citing *Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121 (N.D. Ill. 2017); *Briggs*, 2016 WL 1043429, at *5 (at the conditional certification stage, an employer's assertion of an exemption defense is a "premature merit-based argument" requiring a more fact-intensive analysis which is "better accomplished with the aid of discovery"). Moreover, "[P]laintiffs can be similarly situated for purposes of the FLSA even though there are distinctions in their job titles, functions, or pay." *Ruffolo v. LaSalle Grp., Inc.*, No. 18 C 3305, 2019 WL 978659, at *5 (N.D. Ill. Feb. 28, 2019)(citing *Jirak*, 566 F. Supp. 2d at 848–49; *Garza v. Chicago Transit Auth.*, No. 00 C 0438, 2001 WL 503036, at *3 (N.D. Ill. May 8, 2001) ("That the Plaintiffs and other potential plaintiffs may have different jobs … [and] earn different amounts of money …

does not mean that they are not operating under the same policies that allegedly entitle them to overtime pay"); *see also Ford v. U.S. Foods, Inc.*, No. 19-CV-05967, 2020 WL 5979553, at *3 (N.D. Ill. Oct. 8, 2020) ("[W]hether … discrepancies [between potential class members] will become important down the road does not affect the current question of conditional certification.") (citing *Salmans v. Byron Udell & Assocs., Inc.*, No. 12 C 3452, 2013 WL 707992, at *4 (N.D. Ill. Feb. 26, 2013)).

As for differences in the alleged guaranteed pay rates[4], Plaintiff does not have to show that the potential collective members have identical pay or compensation arrangements for conditional certification to be granted. *See Alvarez v. City of Chicago*, 605 F.3d 445, 449 n.1 (7th Cir. 2010) (plaintiffs may be similarly situated even if specifics for compensation vary). In *Alvarez*, paramedics employed by the city of Chicago filed an action under the FLSA claiming the city willfully failed to compensate them for overtime. *Id.* at 446. The Court found that if the paramedics ultimately recovered, their damages could be determined by a mathematical formula common to all class members, even if specifics like the number of hours or wage varied. *Id.* at 449 n. 1. Because the paramedics had the same predominate claim—willful failure to pay overtime—the class was homogenous despite the fact they might be compensated using slightly different pay theories. *See id.* at 448–49. In both *Alvarez* and here, the predominant question in the case is whether Defendant willfully failed to pay overtime. Since that claim is the same for all employees paid pursuant to a flat day rate, the fact that employees may be compensated

---

[4] As an illustration of these differences, at the May 4, 2022 hearing, Defendant argued that some employees were paid a 6-day guarantee, while others were paid a 4-day guarantee.

7

somewhat differently, does not prevent them from being a homogenous group. Like in *Alvarez*, a mathematical formula could be created here to account for varying degrees of differences in compensation rates.

Courts have further recognized that plaintiffs can be similarly situated despite differences in job titles or functions. *Jirak*, 566 F. Supp. 2d at 848–49; *Garza*, 2001 WL 503036, at *3 (existence of different pay and jobs did not prevent plaintiffs from operating under the same policies that entitle them to overtime pay). As such, where plaintiffs and proposed class members are alleged to be victims of "a common policy or plan that violated the law," courts have found them to be similarly situated, regardless of day-to-day job duties. *Jirak*, 566 F. Supp. 2d at 847–48.

Here, Plaintiff alleges a common policy or plan of willfully failing to pay their "day rate" employees for their overtime work. The employee affidavits submitted by Plaintiff in support of this "day rate" policy reveal that the employees, despite their variation in job duties, were all paid a flat "day rate" sum for each day they worked without regard to the number of hours they worked in the day, and despite the employee normally working more than 40 hours in a week (Doc. 50-1; Doc. 50-2; Doc. 50-3). It is therefore the employees' non-exempt status and right to overtime, and not their daily job functions, that bind the proposed class of employees. While Defendant may disagree as to the relevance of the alleged variations in job duties and compensation, at this stage the Court "does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations." *Freeman v. Berkeley Cont. Packaging, LLC*, No. 3:12-CV-1255-DRH-SCW, 2014 WL 3360239, at *2 (S.D. Ill. July 9, 2014) (citing *Summa v. Hofstra*

8

*Univ.*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010)). Instead, should discovery demonstrate "that the putative class is inappropriate, unjustified, or unworkable", Defendant may seek decertification during the second phase. *Gambo*, 2005 WL 3542485, at *5.

In sum, given the minimal burden on Plaintiff at the conditional certification stage, the Court finds that certification is appropriate. However, the Court must address the scope of the proposed class and the issue of its personal jurisdiction over potential opt-in plaintiffs. As mentioned above, there is a considerable nationwide split on this issue, in addition to two pending petitions for writ of certiorari currently before the Supreme Court. Considering this split, and the potential for a forthcoming decision on the petitions for writ of certiorari which may result in binding precedent on this exact issue, the Court is hesitant to definitively rule on this issue until the petitions for writ of certiorari have been ruled on, and if one is granted, the resulting opinion issues. However, the Court is equally cognizant that a delay in rendering a decision here may result in the running of the statute of limitations and the expungement of individual rights.

Mindful of this tension, the Court finds it appropriate to continue with certification and limit the scope of the proposed class to those potential plaintiffs with a connection to Illinois. In so ruling, the Court observes that the analysis set forth by the Sixth and Eighth Circuits on this issue are more persuasive, and at this stage agrees that the opt-in plaintiffs' claims must have a connection to Illinois to establish personal jurisdiction over Defendant. Significantly, the Court agrees that the fundamental and procedural differences between class actions under Rule 23 and collective actions under the FLSA

require different approaches to personal jurisdiction. *See Canaday*, 9 F.4th at 402 ("'Rule 23 actions are fundamentally different from collective actions under the FLSA,' and those differences require different approaches to personal jurisdiction.'") (internal citation omitted)). Further, the absence of nationwide service of process "rings loudly when juxtaposed with the many other instances in which Congress included nationwide service of process provisions in laws enacted before and after the FLSA's passage in 1938." *Canaday*, 9 F.4th at 399; *see also Parker v. IAS Logistics DFW, LLC*, No. 20 C 5103, 2021 WL 4125106, at *3 (N.D. Ill. Sept. 9, 2021) (citing *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 106 (1987) ("Congress knows how to authorize nationwide service of process when it wants to provide for it. That Congress failed to do so here argues forcefully that such authorization was not its intention.")).

While the Court is cognizant that this ruling could negatively impact the potential rights of the out-of-state opt-in plaintiffs, unless binding guidance on this issue becomes imminent, the Court declines to extend its jurisdiction beyond proper bounds. As to the potential impact on out-of-state opt-in plaintiffs, at the May 4, 2022 hearing, the parties discussed the possibility of an agreement to toll the applicable statute of limitations period should one of the pending writ of certiorari be granted. The parties informed the Court by e-mail correspondence dated May 18, 2022 that they have reached an agreement to toll the statute of limitations of putative class members as of May 4, 2022, and request an order confirming the same.

District courts have discretion to equitably toll statutes of limitations in FLSA cases to prevent inequity. *See Koch v. Jerry W. Bailey Trucking, Inc.*, 482 F. Supp. 3d 784, 789

10

(N.D. Ind. 2020); *Lucas v. JJ's of Macomb, Inc.*, 321 F. Supp. 3d 882, 885 (C.D. Ill. 2018); *Curless v. Great Am. Real Food Fast, Inc.*, 280 F.R.D. 429, 435 (S.D. Ill. 2012); *see also Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946) ("This equitable tolling doctrine is read into every federal statute"). "[E]quitable tolling is rare." *Herrera v. Cleveland*, 8 F.4th 493, 499 (7th Cir. 2021) (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990) ("Federal courts have typically extended equitable relief only sparingly")). Nonetheless, equitable tolling "is warranted if the litigant establishes (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance prevented timely filing." *Lucas*, 321 F. Supp. 3d at 885 (citing *Knauf Insulation, Inc. v. S. Brands, Inc.*, 820 F.3d 904, 908 (7th Cir. 2016)).

Although notice will be limited to only those plaintiffs whose claims have a connection to Illinois, in order to avoid prejudice to out-of-state opt-in plaintiffs, the Court finds it appropriate to exercise its discretion and toll the statute of limitations for the claims of "All employees Wood Group paid according to its day rate pay plan in the past three years regardless of their connection to Illinois." Given the current inconsistency in the law on this subject, and the potential for forthcoming binding precedent on this issue, exceptional circumstances exist. Both parties have acted in good faith and have been diligent in their pursuit of the matter, and the Court will not punish the potential plaintiffs for ambiguity in law in this area. Consequently, to avoid prejudice to the potential class of out-of-state opt-in plaintiffs, the Court will toll the statute of limitations from May 4, 2022 until the later of: (1) 30-days from the entry of an order denying the petitions for writ of certiorari in *Canaday* and *Waters*, or (2) should one or

11

both of the petitions be granted, 30-days from the issuance of the corresponding opinion(s) from the United States Supreme Court.  The Court believes this is fair to the class, does not prejudice Defendant, and is consistent with other district courts' interpretations.  The parties, however, are granted leave to seek appropriate relief from this Order should appropriate circumstances arise.

## Disposition

For the above-stated reasons, Plaintiff's Motion for Conditional Certification is **GRANTED** consistent with the provisions of this Order.  Plaintiff's proposed class is limited to those potential plaintiffs whose claims have a connection to Illinois.  Accordingly, the Court **CONDITIONALLY CERTIFIES** this case as a collective action under the FLSA and **AUTHORIZES** Plaintiff to send notice under § 216(b) of the FLSA to: **All employees Wood Group paid according to its day rate pay plan in the past three years with a connection to the State of Illinois**.

The Court does not, however, approve the proposed notice attached to Plaintiff's Motion.  Instead, the Court **DIRECTS** the parties to confer regarding disputes as to the form of notice.  The parties shall make every effort to resolve outstanding issues between themselves.  The parties shall submit a joint proposed notice, or separate notices if an agreement cannot be reached, to the Court's proposed documents e-mail address by **June 3, 2022**.

Finally, the claims of all potential opt-in-plaintiffs, defined as "All employees Wood Group paid according to its day rate pay plan in the past three years regardless of their connection to Illinois" are **TOLLED** effective from May 4, 2022 until the later of: (1)

30-days from the entry of the orders denying the petitions for writ of certiorari in *Canaday* and *Waters*, or (2) should one or both of the petitions be granted, 30-days from the issuance of the corresponding opinion(s) from the United States Supreme Court. The parties are **DIRECTED** to file a status report with the Court within 5-days of the Supreme Court's decisions on the petitions for writ of certiorari in *Canaday* and *Waters*.

**SO ORDERED.**

Dated: May 20, 2022

_____
DAVID W. DUGAN
United States District Judge