UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| CHRIS IANNOTTI, Individually and For Others Similarly Situated,<br><br>v.<br><br>WOOD GROUP MUSTANG, | Case No. 3:20-CV-958-DWD<br><br>Honorable David W. Dugan |

**JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT**

Plaintiff Chris Iannotti (**"Plaintiff"**) and Defendant Wood Group Mustang **("Defendant")** (collectively "**the Parties**") file this Joint Motion for Approval of FLSA Settlement and in support would show as follows:

**I.  SUMMARY**

The Parties have reached a settlement of Plaintiff's pending claims under the Fair Labor Standards Act, 29 U.S.C. 201 *et seq.* ("**FLSA**"), Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 ("IWPCA").

The FLSA settlement was the result of arm's-length negotiations conducted by experienced counsel for the Parties and after formally and informally exchanging information. The terms of the settlement are reasonable and appropriate, and fair to the Parties. Accordingly, the Parties ask the Court to approve the settlement and enter an order dismissing this lawsuit with prejudice.

**II.  BACKGROUND**

This is an action brought by Plaintiff pursuant to the FLSA. The lawsuit was filed on September 18, 2020. In the lawsuit, Plaintiff alleged that Defendant failed to comply with the FLSA and IMWL in relation to overtime compensation.  Further, Plaintiff alleged that he was entitled to damages pursuant to the IWPCA based on Defendant's alleged failure to comply with the FLSA

1

and/or IMWL. Plaintiff sought unpaid back wages for overtime hours allegedly worked, liquidated damages, pre- and post-judgment interest, and attorney's fees, expenses and costs.

Defendant has at all times denied any liability or wrongdoing and disputes Plaintiff's claims. Defendant, without admitting or conceding any liability, has agreed to settle this lawsuit in order to avoid the expense and risks associated with continued litigation.

## III.  SETTLEMENT

The Parties now seek Court approval of their agreed settlement. The settlement represents a fair compromise of a bona fide dispute concerning the compensation practices at issue and the hours worked by Plaintiff. The settlement does not include or otherwise impact the potential FLSA claims of any other employees of Defendant not subject to this suit. This settlement is not a mere compromise of guaranteed substantive rights under the FLSA.

### A.  HOW THE SETTLEMENT WAS REACHED

Prior to engaging in settlement discussions, the Parties independently and thoroughly investigated the claims and defenses at issue. Additionally, the Parties conducted an in-depth analysis of the potential damages, including reviewing and processing business and payroll records and conducting witness interviews. These efforts provided all parties involved with great insight as to potential liability and the range of recovery at issue. Further, these efforts, coupled with the Parties' thorough preparation and familiarity with the facts and law surrounding the alleged failure to pay overtime compensation, allowed the Parties to intelligently and in good faith weigh both the risks and benefits of costly and time-consuming continued litigation.

The settlement was negotiated by attorneys who have experience prosecuting and/or defending this and similar claims. Both sides have had considerable experience in prosecuting and/or defending and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation. *Austin v. Pennsylvania Dep't*

*of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the Plaintiff"); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").

      **B.**    **TERMS OF THE SETTLEMENT AGREEMENT**

The key details of the proposed settlement have been set forth in the Settlement Agreement which has been filed under seal with the Court.

      **C.**    **SUBMITTING THE SETTLEMENT AGREEMENT UNDER SEAL**

The terms of the settlement have been memorialized in a comprehensive settlement agreement. The Parties requested that the Settlement Agreement and exhibits thereto be filed under seal for the Court's review. Defendant believes that the publication of the Settlement Agreement and attachments thereto is not in the best interest of their continuing business operations, and Plaintiff is not opposed to the submission of these documents under seal and believes that Defendant have articulated good cause for submitting the documents under seal.

**IV.**    **THE COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT**

      **A.**    **Approval of FLSA Settlements**

The Parties are now seeking Court approval of the settlement under the FLSA. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) (requiring Court or Department of Labor approval for FLSA settlements, and explaining the low standard for judicial review when the parties are represented by counsel); *Camp v. The Progressive Corp., et al*, 2004 WL 2149079 (E.D. La. 2004); *see also Evans v. Jeff D.*, 475 U.S. 717, 726-27 (1986) (in deciding whether the proposed settlement reflects a "reasonable

compromise" of a bona fide dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement). "The Seventh Circuit has not addressed the question of whether stipulated agreements under the FLSA require court approval, but district courts in the Seventh Circuit routinely require such approval." *Mollett v. Kohl's Corp.*, No. 21-cv-707-pp, 2022 WL 4641082, at *2 (E.D. Wisc. Sept. 30, 2022) (collecting cases). *Cf. Farber v. Riesterblend, Inc.*, No. 1:22-cv-17-HAB, 2022 WL 17741830, at *1 (N.D. Ind. Dec. 5, 2022) ("FLSA collective action settlement agreements require judicial approval.").

"Courts approve [FLSA] settlements when they are reached as a result of arm's-length negotiations to resolve bona fide disputes." *Winking v. Smithfield Fresh Meats Corp.*, No. 1:22-cv-01937, 2022 WL 16706898, at *1 (N.D. Ill. Nov. 4, 2022). "The court must consider whether the agreement is a 'reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought by an employer's overreaching.'" *Mollett*, 2022 WL 4641082, at *2 (quoting *Burkholder v. City of Ft. Wayne,* 750 F. Supp. 2d 990, 994-95 (N.D. Ind. 2010)). "A reviewing court normally approves a settlement where it is based on 'contentious arm's-length negotiations, which were undertaken in good faith by counsel' and where 'serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.'" *Farber*, 2022 WL 177441830, at *1.

### B. The Settlement Resolves a *Bona Fide* Dispute

The Parties believe that the terms and conditions of this settlement are fair, reasonable, adequate, beneficial, and in the best interests of all parties. As noted above, this proposed settlement was reached following the exchange of information and data. In total, the parties exchanged approximately 1,000 pages of documents consisting of pay records, time records, and documents related to Plaintiff's job duties. The Parties also engaged in a significant volume of other written discovery. Utilizing the extensive discovery exchanged between the Parties, they have fully analyzed

the pertinent factual and legal issues in this case as well as having assessed the strengths and weaknesses of the claims and defenses at issue. Further, and as mentioned above, the settlement is the result of extensive arm's-length negotiations between counsel with extensive experience with wage and hour litigation.

This settlement also presents several questions of law and fact that support the fairness and reasonableness of the settlement. Defendant asserted several affirmative defenses that, if Defendant prevailed, such defenses would successfully defeat or limit some or all of Plaintiff's claims. For example, Defendant asserted as affirmative defenses that Plaintiff was exempt from overtime. These defenses raised questions of law and fact regarding whether Plaintiff was paid on a "salary basis" and whether his job duties satisfied the requirements of the FLSA and IMWL's exemptions.

Further, the Parties disagreed on whether Plaintiff would be able to establish that Defendant acted willfully in order to extend the FLSA's statute of limitations from two years to three years. *See* 29 U.S.C. § 255. The Parties also disagreed whether Defendant would be able to establish that it acted in "good faith" in classifying Plaintiff as exempt from overtime and compensating Plaintiff. If Defendant prevailed on its good faith affirmative defense, this would potentially impact (and possibly eliminate) Plaintiff's recovery of liquidated damages. *See* 29 U.S.C. § 260.

Finally, Plaintiff's claim under the IWPCA presented significant legal questions. If a settlement had not been reached, the Parties would have to address the legal question of whether Plaintiff had a cognizable claim under the IWPCA, which would have required extensive motion practice, depending on the outcome of such motion practice, addressing the issue at trial.

Considering the uncertainties presented by the legal and factual issues involved with continued litigation, the Parties agreed that "the value of immediate recovery" and the risks associated with the legal and factual issues outweigh continued litigation. Moreover, given the financial uncertainty associated with continued litigation and the strong likelihood that absent a settlement, this case would

have proceeded to trial, a compromise of the claims prevents all parties from incurring the additional costs and delay associated with a trial and appeal.

As such, the current Settlement before the Court is the result of a *bona fide* and contested dispute where serious questions of law and fact exist that place the ultimate outcome of the litigation in doubt. Without the Parties' willingness to engage in settlement discussions, this case would have not been resolved.

### C.  The Terms of the Settlement are Fair and Reasonable

"A strong presumption of fairness attaches to a settlement agreement when it is the result of [arm's-length] negotiations." *Cf. Shah v. Zimmer Biomet Holdings, Inc.*, No. 3:16-cv-815-PPS-MGG, 2020 WL 5627171, at *6 (N.D. Ind. Sept. 18, 2020) (approving class action settlement as fair and reasonable).

Here, the Agreement was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Counsel for all Parties have considerable experience in prosecuting, defending, and settling federal and state wage-and-hour claims, and in this case were particularly well informed as to the facts and circumstances of the Lawsuit after extensive formal and informal discovery on all issues over the life of this litigation.

The Parties have been litigating this case since 2020.  The Parties conducted discovery, disputed damages, and liability which informed the Parties' respective positions on all issues in this case. After the Parties reached an agreement in principle, the Parties engaged in further negotiations concerning the specific terms of the settlement and the scope of the Agreement. The settlement documents for which the Parties seek approval and have been executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations.

The Parties are therefore requesting that the Court:

(a)  Approve this settlement, including all of the terms set forth in the Settlement Agreement;

(b) Sign the attached Order approving the Settlement Agreement.

Respectfully submitted,

*/s/ Alyssa White*
Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
Alyssa White
Texas Bar No. 24073014
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100
713-352-3300 fax
mjosephson@mybackwages.com
adunlap@mybackwages.com
awhite@mybackwages.com

Richard J (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788
713-877-8065 fax
rburch@brucknerburch.com

Douglas M. Werman
**WERMAN SALAS, P.C.**
77 W. Washington St., Ste. 1402
Chicago, IL 60602
312-419-1008
dwerman@flsalaw.com

**ATTORNEYS FOR PLAINTIFF**

**AND**

4871-7370-1501, v. 1

**THE KULLMAN FIRM, P.L.C.**

/s/ *Bryan Bowdler*
_____
S. Mark Kylza (*admitted pro hac vice*)
Bryan Edward Bowdler (*admitted pro hac vice*)
1100 Poydras ST., Ste. 1600
New Orleans, LA 70163
Telephone:     (504) 524-4162
Facsimile:       (504) 596-4189
smk@kullmanlaw.com
beb@kullmanlaw.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

    I hereby certify that on the 13th day of September 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

    */s/ Alyssa White*
    **Alyssa White**

4871-7370-1501, v. 1